# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

TowANNA CHERIE Rogers

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

NRG ENERGY INC.
MARCIA M. MARTIN
LAURIE GIANNON

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

PETER JOHNSON

**Complaint for Employment Discrimination**

Case No. 18-2694 - FLW -DEA ✓

*(to be filled in by the Clerk's Office)*

Jury Trial: ☐ Yes ☐ No
           *(check one)*

2

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name    IOWANNA CHERIE Rogers

Street Address

City and County    Lynchburg VA / Lynchburg County

State and Zip Code    VIRginia    24502

Telephone Number

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name    NRG ENERGy INC.

Job or Title (if known)    Mauricio Guitierrez / CEO

Street Address    804 CARNEgie Center

City and County    PRINCEtON MERCER County

State and Zip Code    NEw JERSEy

Telephone Number

E-mail Address (if known)

Defendant No. 2

Name    MARCIA MANN MARtiN

Job or Title (if known)    DIREctor Talent Acquisition

Street Address    804 CArnegie Center

City and County    PRINCEtON NJ 08540 Mercer County

3

Case 3:18-cv-02694-FLW-DEA Document 25-1 Filed 02/26/19 Page 3 of 22 PageID 1
Case 3:18-cv-02694-FLW-DEA Document 25-1 Filed 02/26/19 Page 3 of 22 PageID
881

State and Zip Code    *PRINCETON NJ 08540*

Telephone Number    ███████████

E-mail Address
(if known)    ███████████

Defendant No. 3

Name    *LAURIE GANNON*

Job or Title
(if known)    *MANAGER, HR RECRUITING*

Street Address    *804 CARNEGIE Center*

City and County    *Princeton Mercer County*

State and Zip Code    *New Jersey 08540*

Telephone Number    ███████████

E-mail Address
(if known)    ███████████

Defendant No. 4

Name    *PETER JOHNSON*

Job or Title
(if known)    *VP HUMAN RESOURCES*

Street Address    *804 Carnegie Center*

City and County    *Princeton, Mercer County*

State and Zip Code    *New Jersey 08540*

Telephone Number    ███████████

E-mail Address
(if known)    ███████████

## C. Place of Employment

The address at which I sought employment or was employed by the defendant(s)
is:

Name    *NRG Energy Inc.*

Street Address    *804 Carnegie Center*

City and County    *Princeton Mercer County*

State and Zip Code    *NEW JERSEY*

Telephone Number    ███████████

4

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Other federal law *(specify the federal law)*:

_____

☑ Relevant state law *(specify, if known)*:
    New Jersey Law Against Discrimination

☐ Relevant city or county law *(specify, if known)*:

_____

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Towanna Rogers v. NRG Energy, Inc.
2/2/2018

III.    "STATEMENT OF CLAIM"

I, Towanna Rogers, former employee of NRG Energy Inc. am entitled to punitive and compensatory damages because the leadership at NRG Energy Inc. and or its representatives, specifically direct supervisors, Marcia Mann Martin, Director – Human Resources Talent Acquisition and Laurie Gannon, Human Resources Senior Manager, racially discriminated, retaliated, harassed, created a hostile environment, were bias and cruelly conspired against me.  NRG's Human Resources department is defunct and lacks credible leadership under the appointment/promotion of a new Director – Marcia Mann Martin and she had no formal training in this new role.   This appointment cost me my job a friendship and trusting relationship with my supervisor Laurie Gannon, as she reverberated, "I have to protect my job Towanna."  I know longer recognized Laurie's behaviors shortly after both Laurie and I began reporting to Marcia Mann Martin.

The harassment began around December 2015 by Marcia Mann Martin, a smear campaign on my end of the year review and initially to block me from any advancement or promotion to tarnish my good name and reputation and to harass and racially discrimination against me which increased aggressively initially by Martin when my supervisor Gannon asked me to attend a Diversity meeting with the Attorney of the company to combat diversity issues on campus in Princeton, this meeting took place in February 2016 and I became a target by Martin simply for helping the company in providing recommendations to leadership in this company-focused area, she was furious about my attendance at this meeting.  In still having an open and honest relationship with Laurie, I directly asked her, "what is happening to me here?" after she presented to me on June 1, 2016 at 11:30am, as she recorded in her work diary, a bogus list of 5 very minor issues given to Laurie from Martin regarding Towanna Rogers.  Laurie let me know, "I'm being pressured by Marcy, my hands are tied," Laurie and I constantly complained to each other privately, how awful a time we were in for under Martin's supervision, even before it was formally announced as the whispers in the department Martin would have responsibility for our group.   Laurie and I enjoyed the professional freedom and treatment received from Peter Johnson and knew immediately, this particular person (Marcia Mann Martin) we did not approve of her character or tactics as a leader in the company for several reasons.  As an employee in Human Resources, specifically, the Recruiting team, I knew there were grave issues with the hiring of African American's, as long as there was a small group of AA employee's Martin was comfortable, she was directly responsible for the Recruiting department for over 8+ years and the running joke around the Princeton campus was "wow you got hired, but you're not blond, how could this happen?"  It was very evident that whoever was in charge of Recruitment at the time had a concerted effort for "White Only" employees on campus in the Princeton, NJ location.  I couldn't believe how discouraging the employee metrics resulted as it related to cultural diversity at NRG, it was really sad.

I enjoyed plentiful and uneventful employment with NRG from January 2014 through May 2016, ultimately my job was terminated on March 7, 2017.  I worked tirelessly in my role and my time report will show I worked upwards of 50+ hours every week and on weekends during my entire tenure at NRG (over 3+ years).   I was one of the primary members of the Human Resources Recruitment team in keeping the department on task and

Towanna Rogers v. NRG Energy, Inc.
2/2/2018

even though I was discouraged about the diversity issues, I had great hopes I would one day be able to help effect change at the company (NRG) and be a part of the solution never a part of the problem. I had become the "go to person" for African American's at the company (there were no African American Business Partners as a resource) and I always gave an encouraging word to any employee who trusted me enough to share their personal story and/or frustrations about the company. I was NRG's biggest cheerleader, I even wrote a musical medley about NRG, I loved what my role was at the company and I loved NRG and I just wanted to be a part of the success of the company and helping to advance the company's bottom line.

From January 2014 through November 2016, I reported to Tom Inskeep, a former employee, Tom and I reported to Peter Johnson as the Director of HR, I began reporting to Gannon November 2016 until termination, under the direction of Peter Johnson as Director of Human Resources until May 2016. Peter was promoted to VP of HR and then promoted Martin to Director where she had oversight of our team as of May 2016 and beyond, this is where major issues began immediately.

As a member of the recruitment team for over two years, at this point, there was never made mention to me or documented on my performance appraisals any major problems, in fact, once I began reporting to my new supervisor, Laurie Gannon, she never once reported to me there was a problem with my work or work ethic or professionalism or communication of any sort. Laurie and I had one to one meetings on a weekly basis, every Wednesday, prior to this, there were no complaints from Tom Inskeep for me to ever be concerned about my job, there were no major issues. In addition, there were never any reports or communication from our Director, Peter Johnson who I reported up to for over 1+ years, he had never ever sent out any communication to my previous supervisor Tom Inskeep or my new supervisor Laurie Gannon of any issues with me ever. In fact, I was up for promotion for Recruiter, Laurie Gannon and I had worked on a plan for a couple of months to get me to were she believed I belonged as far as salary and title, she said defiantly to me "you're working 3 levels above your current paygrade and I am going to do everything in my power to get you a raise and a promotion, I am going to get this done!"

Laurie Gannon then went to our Director Peter Johnson to inform him of the confidence and respect she had for me as a hard worker and dedicated team member, she highlighted how impressed she was with my knowledge base, skill level, dedication and contributions and request I be promoted sometime Quarter 1-2016. Laurie mentioned to me she had this initial conversation about my promotion with Peter sometime at the end of December 2015 and Laurie and I spoke again about my wages and what would be an acceptable salary for me, given I was working so much overtime, we talked about this in January 2016.

At this point, everything is good, I'm excited that my new supervisor took such an interest in my well being and capabilities and she believed I should be recognized for it by receiving a raise and a promotion. Laurie continued to show her excitement in working with me on her team and my skill level as it related to Human Resources and the detail in which I would give regarding diversity in the workplace, so much so, Laurie invited me to attend a meeting with a high-level official in the company who wanted to do something about the lack of diversity at NRG, this high-level official and I had several conversations about diversity in passing as he was impressed with my knowledge and interest in the subject matter as well. This meeting with our Senior Counsel, Mr. David Hill, although a great success, before Laurie

and I could get back to our desks, Martin had a conversation with our VP of HR, Jennifer Wallace (Martin and Wallace are very close) to tell her we were meeting about Diversity with a senior leader in the legal department and Martin apparently wasn't happy about it. Subsequently, Gannon was called into the back office and reamed out by Wallace. Laurie told me what happened as soon as she left the teleconference meeting, Wallace called from our Houston Headquarters, Gannon was utterly confused about Wallace's questioning. According to Laurie, she was asked by Wallace, "why did you have Towanna Rogers in that meeting?" Laurie was devastated and answered, "she was a subject expert and I trust her knowledge in this area," I observed somewhat terror in her face as she told me about the conversation with her and Wallace, she was sad and almost in tears. Laurie expressed to me, she was reprimanded because she asked me a Black person to attend this diversity meeting. As I was listening to Laurie, it felt very uncomfortable and almost as if a conspiracy to conceal the truth as to Martin and Wallace knowingly inhibiting African American's from being hired at NRG and definitely wanting to control how many Blacks would be allowed to work at the Princeton, NJ location.

Laurie was also a champion for me when she discovered I was being left behind regarding promotion as the most tenured coordinator in the HR department, at the time, who had the most responsibilities out of all the other coordinators who started with the company one year after me (all whites) who had been promoted above me within one year, I had been there two years as a senior coordinator and had not received a promotion, Laurie was not happy about this at all and promised she was going to do something about it, but again, everything changed when Martin stepped up in May 2016. Laurie knew I was being overlooked for raises and promotions and even special projects, simply because I was African American and for no other reason outside of this as she witnessed me as a "high performer." I privately received this information from my supervisor Laurie Gannon, while she still felt comfortable sharing with me her most intimate observations.

As my end of the year December 2015 performance appraisal was being finalized in March of 2016, something peculiar showed up on my performance review. Laurie Gannon, mentioned someone from HR leadership was stating negative things about me at the SHRLT (Senior Human Resources Leadership Team) meetings. I questioned my supervisor Laurie about the mystery person who was stating these negative things and my supervisor told me, "I cannot tell you who this is," I asked Laurie to go to Peter Johnson our Director to press my concern about, "how unfair it is too have an untrue accusation written about me on my appraisal and I don't know where it's coming from or who is making these statements, how can I defend myself if I'm not given the opportunity to speak to my accuser?" Laurie agreed and thought the request to Peter was fair and she spoke to him about it. Peter made the statement to Laurie, "Towanna cannot know who's making these statements and it will have to remain on her 2015 end of the year performance appraisal because it came from a leader who is on the SHRLT (Senior Human Resources Leadership Team)!"

Laurie privately revealed to me who the mystery person on the SHRLT spreading gossip and negative things about me and she revealed, of course, "it is Martin – Director Talent Acquisition and Recruiting and member of the SHRLT." It was very clear to me at this point, I was a target of Martin's because I was Black and seeking to enhance my career and future with the company (NRG), at NRG, "Blacks" are typically not promoted and are treated differently than our White counterparts. Laurie told me she would not let these statements by Martin, which lacked credible evidence and derogative information, which she had not ever

Towanna Rogers v. NRG Energy, Inc.
2/2/2018

witnessed herself with me, effect my raise and promotion plan, I was told this in March of 2016 by Laurie Gannon.

Unfortunately, as I mentioned earlier, Martin took responsibility of the recruitment group at the end of May 2016 and within one to two weeks on June 1, 2016, I was presented with a bogus list of petty issues by my supervisor Laurie Gannon from Martin, please keep in mind, Martin presented these petty issues to Laurie Gannon who had been my supervisor for over a year and had never presented any issues to me or my Director Peter and Martin the new Director within one to two weeks had a derogative list about me, this was very suspicious to me?

August 2016, now it's time for mid-year performance review 2016, Martin insisted she accompany Laurie Gannon to my performance review, this was not the normal process, the Director never attends the performance review with the manager and the managers subordinates, I knew I was being set up at this time to be fired and Laurie was participating. I read the 2016 performance mid-year review from Gannon and Martin, please note, Martin should not have had purview, it should have been Peter Johnson because I reported up to him for 6 months prior, this was suspicious to me indeed!   The 2016 mid-year review was filled with lies, slander, hate, false allegations, rudeness, unforgiveness, deceit all written about me on the 2016 mid-year report from Gannon and Martin in which I can prove until this very day was brutally inaccurate, the report was filled with personal vindictiveness and hate, even lies and I have proof to show the malice that had befallen me.  In my own defense, I happen to know I had never worked to diligently to make the team as successful as I did in 2016 and all of my "good" work was never ever highlighted.  I was filling in for a Lead Recruiter, successfully doing his job as well as my own (my hours increased over 50+) and I was shocked this dedication alone had not been highlighted on the 2016 progress report, in fact, there was nothing complimentary at all on the progress report, had I not done anything right? (I have attached *Exhibit 9* to these documents, it is a "Chart of my Coordinator Responsibilities." I created this chart on my own to again revisit the discussion with Gannon and Martin on "why are my accomplishments for 2016 being omitted and ignored?"  I requested another meeting to make Gannon and Martin know just what they had done as they had written false, inaccurate accusations about me that are not credible or verifiable.

I eventually had a breakdown and experienced severe depression, I began to see a psychiatric nurse in September 2016, she excused me from work for a couple of weeks, I still kept my appointments after returning to work for support.  I was also receiving counsel from my Pastor, currently as well.

I went to NRG's compliance department and made filed a formal complaint of racial discrimination, harassment and retaliation, to no avail.

I continued to request a new review of the inaccurate accusations stated in the 2016 performance appraisal but to no avail.  Eventually, in December 2016, Laurie Gannon removed one of the major false accusations about me, but told me she could not remove anything else from my review even if I was able to prove to be correct, this was disheartening.

Martin continued to harass me by requesting my supervisor Gannon investigate all of my work, this continued through February 2017.  Laurie confirmed to me she had concluded her investigations and told me she could not find anything wrong with my work or work ethics and she reported her findings to Martin as the same.

Towanna Rogers v. NRG Energy, Inc.
2/2/2018

I shared my concerns regarding this unfair treatment with another NRG Director and he advised me that this was irresponsible behavior by leadership and management, him being one of the only other African American employees at the Princeton, NJ location, his private thoughts to me were, he believed I was being racially discriminated against and harassed, the down side was this particular Director had no answer for me on how I could gain help in this situation, though he did become a solid ear during my entire tenure at the company.

My untimely termination happened on March 7, 2017. There was a one to one meeting scheduled with myself and Gannon but I took ill about 4:30pm in the afternoon, vomiting in the bathroom. I texted Gannon to let her know I wouldn't be able to make the meeting and left work to take care of myself, I received a text message from Gannon, shortly thereafter, stating I was no longer an employee of the company, effective immediately, my role had been terminated due to workforce reduction and I had been locked out of the facility and unable to retrieve any personal belongings. My colleague from NRG three weeks later sent me the add to an INDEED job posting where NRG/Princeton, NJ location was hiring for my specific job role, I was devastated, I have not been able to return to work due to my medical condition.

In closing, the small number of African American employees at NRGs Princeton, NJ location all are aware of the unfair treatment received by African American employees as a whole in Princeton remain silent to this day to keep their employment with the company. Currently at the Princeton, NJ location there are ~400-500 employees and the majority are "Whites Only," most positions of supervisory nature are "Whites Only" and cultural diversity is void, NRG Energy, Inc. lacks Black supervisors and Black leadership at all levels and the company has shown they could care less.

Sincerely,

Towanna Cherie Rogers

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [x] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [x] Other acts *(specify)*: HOSTILE ENVIRONMENT AND HARRASSMENT

   *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

   FEBRUARY 2016

C. I believe that defendant(s) *(check one)*:

- [ ] is/are still committing these acts against me.
- [x] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [x] race _____
- [x] color _____
- [ ] gender/sex _____
- [ ] religion _____
- [x] national origin _____
- [x] age. My year of birth is ~~1956~~ ___. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
- [ ] disability or perceived disability *(specify disability)*

   _____

6

E.  The facts of my case are as follows.  Attach additional pages if needed.

_PLEASE See ATTACHED Case Files with_
_THE EEOC on on around June 1, 2017._

_____

_____

_____

_____

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.  Exhaustion of Federal Administrative Remedies

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_6/1/2017_

B.  The Equal Employment Opportunity Commission *(check one)*:

☐  has not issued a Notice of Right to Sue letter.

☑  issued a Notice of Right to Sue letter, which I received on *(date)*
_12/26/17  (ATTACHED)_ .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐  60 days or more have elapsed.

☑  less than 60 days have elapsed.

7

## V. Relief

COMPENSATORY DAMAGES – It was my goal and intention to remain gainfully employed at NRG Energy, Inc. for the duration of time until my retirement which calculates to fifteen (15) more years or until the age of 65. My employment history demonstrates this probability as I have been gainfully employed in one means or another for over thirty-five (35) years or since my age of fifteen (15) years old. Everything about my professional business acumen and my true job performance at NRG demonstrates the very high probability that I would have fulfilled completing that process had not the discriminatory, retaliatory, bias, racist and adverse actions been taken against me by specific of NRG Energy, Inc., employees. Therefore, I calculate my DAMAGES as follows:

**SALARY & BENEFITS** over the next 15 years: $2,000,000 dollars (Two Million Dollars)

PUNITIVE DAMAGES: I consider NRG's conduct egregiously insidious, and debilitating and because of the extent of the personal detrimental damaging effects that it has had upon me and my family, I am requesting $2,000,000 (Two Million Dollars) in damages.

## TOTAL:

My total relief requested for compensatory and punitive damages is $4,000,000 (Four Million Dollars). My prayer is that you grant these damages to deter the defendant and others from engaging in conduct which formed the basis for my lawsuit.

TOWANNA ROGERS

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*Please see attached pages for breakdown of damages.*

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: JAN 2 , 2018

Signature of Plaintiff

Printed Name of Plaintiff    TOUHNNA CHERIE Rogers

8

**B.** **For Attorneys**

Date of signing: _____, 20__.



Signature of Attorney      _____

Printed Name of Attorney  _____

Bar Number              _____

Name of Law Firm       _____

Address                _____

Telephone Number      _____

E-mail Address          _____

# COMPLAINT

Ms. Towanna Cherie Rogers/NRG former Employee
Talent Acquisition – Senior Recruiting Coordinator
240 Beverly Hills Circle
Lynchburg, VA  24502

███████████

███████████

Hire Date: 1/14/2014
Termination Date/Date of Event:  3/7/17
Consultant from – 1/14/14 to 9/3/14


NRG Energy, Inc.
804 Carnegie Center
Princeton, NJ  08540
Attn: Mr. Mauricio Gutierrez/CEO
609-524-4500
Number of employees: 10,000+

June 5, 2017

**TO: THE US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

I Towanna C. Rogers, currently located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
telephone numbers: ▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮▮▮▮▮ email: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, am
submitting to the New Jersey EEOC local office, located at Two Gateway Center Suite 1703, 283-
299 Market Street Newark, NJ 07102, information for analysis, investigation, and determination
for my complaint I am filing concerning alleged violations of the title VII of the Civil Rights Act of
1964 involving discrimination, harassment, racism and retaliation against my personage,
Towanna C. Rogers, by certain of employees that held supervisory status overseeing my
employment at NRG Energy, Inc., in Princeton, NJ

 My request for relief is addressed in the meanings set forth in the regulations contained within
the procedures established by the Equal Employment Opportunity Commission for carrying out
its responsibilities in the administration and enforcement of the title VII Civil Rights Act of 1964.

For the purpose of this part, and throughout this writing the term *title VII* shall mean title VII of
the Civil Rights Act of 1964.  The terms employer and employees used in this writing shall have
the meanings set forth in section 701 of title VII of the Civil Rights Act of 1964.

The term *Commission* shall mean the Equal Employment Opportunity Commission or any of its
designated representatives, and the term *verified* shall mean sworn to or affirmed before a
notary public, designated representative of the Commission, or other person duly authorized by
law to administer oaths and take acknowledgements, or supported by an unsworn declaration
in writing under penalty of perjury.

The term "district" as used herein shall mean that part of the United States or any territory
thereof fixed by the Commission as a particular district.

The term "area" shall mean that part of the United States within a district fixed by the
Commission as a particular subunit of a district.

The term "local office" shall mean an EEOC office with responsibility over a part of the United
States within a district fixed by the Commission as a particular subunit of a district.

> These meanings which have been set forth within the Code of Federal Regulations, PART
> 1601 – PROCEEDURAL REGULATIONS UNDER TITLE 29 – labor, shall be used for the
> purpose of mutual clarification on my part and that of the EEOC, and the indexing of report
> and denotation within my complaint filed, as well as serving the purpose for an evidentiary
> framework for the Commission to use to analyze my claims of disparate treatment and
> practices by NRG Energy, Inc., Princeton, NJ via certain of employees that suffice my
> establishing and attaining burden of production and clear any burden-shifting thresholds
> presented on behalf of NRG Energy, Inc., Princeton, NJ.  This is also to ensure that the issue
> of burden of production shifts to my employer to articulate a legitimate, nondiscriminatory
> reason for the employment actions my filing claim states were taken against me, and

demonstrating that the employer undertook no legally viable reasonable actions of a conciliatory nature in work related interactions with me regards to the issues my filings address, as opposed to their actions undertaken being a facade and a pretext to dissipate into oblivion the occurrences of discrimination, harassment, bias, racism and retaliation against me as my claim states.

   As entitled by law, I am requesting that my submittal of complaint filing enclosed within this packet and all my accompanying evidentiary material be disclosed and submitted to the appropriate Commission designate local office persons so designated to render my assistance in the filing of charges against NRG Energy, Inc, Princeton, NJ and certain of their employees. I submit that the aforementioned NRG Energy, Inc, Princeton, NJ via certain of their employees engaged in unlawful employment practices within the meaning of title VII, and that I am aggrieved by said practices and I grant permission to have the Commission investigate and give notice to all relevant parties and agencies of the Commission's verifying and granting authorization of my charges following due process as prescribe by the laws governing this process.


This is a bona fide writing probative of my adjuration and the sincerity of my legal prayer.


Towanna Cherie Rogers

June 5, 2017

Compliance:

Thank you for your time and consideration and you input in these matters, your assistance has been instrumental in my decision making process.

Because my conclusions differs from your determination as to whether retaliation in fact played a part in what I experienced, I therefor wish to express to you my findings as a matter of protocol, and also request that you communicate in writing Compliance's findings to me.

Both of these undertakings will assist me in this process when a complete and final determination has been reached in the appropriate context.

My conclusions after reviewing the "ADVERSE EMPLOYMENT ACTION" IN RETALIATION CASES, under **Title VII** and other **Civil Rights sections**, and the **EEOC's Enforcement Guideline on Retaliation and Related Issues** and their defining of "adverse employment action", makes it seemingly clear even under the narrowest interpretation that the actions taken against me **_prior_** to my filing a complaint, specifically in the form of what I feel I have proven was an unfair, unproven, and undeserving poor performance review that I received, was one of the main "adverse actions", along with the highly questionable process in which that review was arrived upon, meaning whom actually had purview and the mismanagement of my review, and the tetchy and difficult conduct directed at me that I endured, all of which not only occurred during the enacting of my review, but leading up to my review and throughout the duration of my review

Clearly the process of handling my review went awry of NRG guidelines and protocol, and I think is evidence of causation, and suggest that the misstatements in my review was a pretext and a ploy to disguise retaliation.

Take note that the **EEOC** has determined that different types of or pieces of evidence, either alone or in combination, may be relevant to determine if the causation standard has been met. In other words, different pieces of evidence, considered together, may allow an inference that the materially "adverse action" was retaliatory. The evidence may include, for example, suspicious timing, verbal or **written statements**, falsity of the employer representative's reason for the "adverse action", or any other pieces of evidence which, when viewed together, may permit an inference of retaliatory intent

I felt threatened by it all, I think reasonably so, and I began to question and explicitly speak to Ms. Gannon about the impartiality of the employment practice being utilized against me, specifically the purview issue, not knowing whom to trust or who actually had jurisdiction in regards to my review, or what process I was undergoing or how the process was being enacted and how that enactment was derived upon, and the overall legality of it. I was given no solace and I felt isolated at that point and as such this all had a very intimidating effect upon me, so much so that at the time it did in fact dissuade me from neither filing a charge of discrimination or harassment nor filing a complaint at that point.

Thus those so named "adverse Actions", some of which are aforementioned came **_first_**. What followed was much introspection and contemplation on my part due to my feeling intense pressure and emotional disruption all of which did in fact alarm me, subsequently causing me to voice my displeasure and objections to the attention of Ms. Gannon and thus to elicit the recourse of "protected activity", or oppose the complete process.

As stated, I assumed the "protected activity" position that because the process leading up to that point I had found to be intimidating and I felt isolated which did in fact dissuade me from making a charge of discrimination or filing a complaint initially.

Once I questioned the process and expressed my concerns and opposition to Ms. Gannon, what I feel ensued was retaliation for opposing what I consider discrimination and harassment, because I would not go along with "their process".

I submit that retaliation does not have to be recognized as only occurring *after* a complaint has been filed, as an *affect* only. I also submit that legally retaliation can be interpreted to occur at any time during an interactive process such as my review process was where a "material adverse action" was the *cause* for my assuming a "protective activity" status.

Where the legal standard requires an examination of the behavior *after the allegations,* the standard for proving retaliation claims *requires only* that it is shown that the actions of the employer representative in question, that their actions might deter a reasonable person from opposing discrimination or participating in a complaint process-yet it *does not* limit the scope of where the injustices could have occurred, nor does it nullify or disqualify *them* if the injustices which led to the complaint occurred at any period during the overall process.

My contention is that retaliation did occur during my interactive review process, and was also clear and present during the junctures of the time periods between Ms. Gannon recommending me for promotion prior to when my review was to be written, and also during the time period when flawed information was put into my review, and as well, also during the time period when pertinent facts which would support a favorable review of my job performance were omitted.

Please take note that the law allows that the demonstrating of a connection between an employee's "protected activity" and retaliation, can be established by both direct and circumstantial evidence and that circumstantial evidence can be based off inferences. My participating in the "protected activity" of opposition to the direct evidence of statements both verbal and written that were untruths and inconsistencies which were recorded in my review, and my "protected activity" of opposition to the mismanagement of my review by Ms. Gannon, and my opposition to the intrusion into my review process by Ms. Martin which was not in accordance with NRG policy, procedure or guidelines, coupled with the about face taken towards me by Ms. Gannon, suffices my believe that this all caused and supports my inferences of discrimination, harassment and retaliation directly and circumstantially.

I submit that if anyone other than Ms. Gannon should have had a say in my review from a supervisor status then that should have been Mr. Peter Johnson because during the period of time for which I was being reviewed it was Mr. Johnson whom was the supervisor to both Ms. Gannon and I and not Ms. Martin.

To date, no logical reason has been provided to validate or support any of the adverse actions taken against me.

It is my contention that the exact moment that I opposed any and all of the things which I conclude were adverse actions on the part of Ms. Gannon and Ms. Martin, and expressed such opposition to either of them acting as the decision maker or as someone influencing the decision maker, then I was legally engaged in a "protected activity", which is my legal right to do so.

I infer that after influence from Ms. Martin that Ms. Gannon by her own admission reversed her position about me as an employee after giving me a resounding vote of confidence and a very high approval rating to her

Supervisor Peter Johnson, even recommending me for a promotion to him. It was only after her meetings and conversations with Ms. Martin in regards to me that the about face by Ms. Gannon occurred. The negative influence and persuasions on Ms. Martin's part, including "a ghost comment" that surface within my review which was explained as " submitted by an anonymous author of whom I could not be informed as to whom that was", all of it was retaliatory, because of Ms. Martin's motives for doing so, which were clearly more personal than professional and is evident by Ms. Martin's meddling in the review process and the mismanaging of me by Ms. Gannon not being based within the standard nor typical NRG operations guidelines procedure, thus personal undertakings are left as to Ms. Martin's motives simply because her actions and process can't be found in company procedural dictates or any NRG HR manual which makes her agenda personal.

I believe the timing of the incidents are suspicious and I conclude that the aforementioned negatively charged influencing from Ms. Martin directly led to Ms. Gannon giving me a untrue and bad review, all of which was harassment, discriminatory and retaliatory and "adverse actions" on both the part of Ms. Martin and Ms. Gannon.

My refusal to sign off on said flawed review was also done as a "protected activity" under the law. The discriminatory treatment which I received, and that said treatment was perpetrated by and through personal motive and not through professional protocol, as well as their insistence to hold firmly to that illogical position was short of coercion yet still clearly rooted in retaliation.

I also believe this resulted in my being punished by my not being promoted, because I was immediately taken out of the running after I expressed objections to Ms. Gannon about Ms. Martin's interference and meddling.

I find there to be no logical reasoning or explanation for those actions also, except retaliation, because my questioning and reporting of Ms. Martin's behavior to Ms. Gannon should have been "protected" by Ms. Gannon, instead during these periods of time when I would upon my inquiry and attempts to gain insight for the purpose of process verification an seek equitable treatment in these matter as well as an affable closure for all, what I received was inconsistent and shifting explanations and cold shoulders.

In my twenty plus years of professional service I had never been subject to such affronting conduct. I am appalled that any of this could occur in what I consider an overall exceptionally managed and sound industry leading company.

In order to ensure that NRG remains a beacon within American industry, a position this company has worked hard to rightfully attain, and continue to advance and set even greater precedents for business, I would like to humbly submit the following suggestions for review by the appropriate company personnel designated for such undertakings:

## Within the Written Employer Policies

**Maintain a written, plain-language anti-retaliation policy, and provide practical guidance about expectations, dos and don'ts, inclusive of examples of retaliation and examples of non-retaliation.**

**Provide proactive steps for avoiding actual or perceived retaliation, and guidance for proper interactions by managers and supervisors with employees.**

**Provide training for all managers, supervisors, and employees on the written anti-retaliation policy.**

**Do not limit training to those who work in offices.**

**Training should include EEOC compliance knowledge and behavioral standards.**

**Provide a review and follow up assessment process to ensure the company anti-retaliation processes are being understood, complied with and enforced.**

## Diversity

Diversity is destined to be the determining factor in whether we survive or not as a species. This is the greatest example of which nature has provided us. We must realize fully that we are living in a shared experience. Diversity is not something which shows our differences, or makes us different from one another, Diversity is that something that reveals and explains our sameness. It will be our recognition of and development of our positive tools to diversify our relationship process amongst our species that will ensure we have the best opportunity for survival as a species.

The 21st century America workplace undoubtable will play a vital role in shaping our country's ability to sustain its global position as a recognized world leader. How we treat our workers and the means of work related provisions we provide them will be determining factors in worker productivity, nation building, and who's who in national and world industry leadership. For these and other reasons great companies are incorporating full Diversity Initiatives which are inclusive of an on-site staffed Diversity Officer/Monitor and mandatory employee all inclusive training modules.

Again, it is my humble suggestion that NRG take notice of this trend of incorporating a company-wide diversity Imitative and study the measurements of success of those corporations and companies whom have wisely adhered to that undertaking and follow suit.

6/5/2017